J-S31009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK GENE WILLITS, | |
| Appellant | No. 1274 MDA 2014 |

Appeal from the Judgment of Sentence December 30, 2013
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001925-2012

BEFORE:  BENDER, P.J.E., ALLEN, J., and WECHT, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 29, 2015**

Patrick Willits (Appellant) appeals from the December 30, 2013 judgment of sentence entered by the Lycoming County Court of Common Pleas of an aggregate term of eight to sixteen years' imprisonment with a consecutive two years' probation.  Appellant now challenges the sufficiency and weight of the evidence supporting his identity as the perpetrator of the offenses. After careful review, we affirm.

Appellant was convicted, after a trial by jury, of burglary, 18 Pa.C.S. § 3502(a); aggravated assault, 18 Pa.C.S. § 2702(a)(4); attempted robbery, 18 Pa.C.S. § 901(a) and 18 Pa.C.S. § 3701; access device fraud, 18 Pa.C.S. § 4106(a)(1)(ii); simple assault, 18 Pa.C.S. § 2701(a)(1); theft by unlawful taking, 18 Pa.C.S. § 3921(a); receiving stolen property, Pa.C.S. § 3925(a); and false reports to law enforcement agencies, 18 Pa.C.S. § 4906(a).

The trial court set forth a factual summary of this matter as follows:

At all relevant times, Thomas Willits (victim) lived at the Harvest Moon Trailer Park in Linden, Pennsylvania. The victim testified that he kept his bank card in his car, which he kept by his home. The victim testified that he never locked his car and his PIN was attached to his bank card. The victim testified that other than his daughter, nobody had permission to access his bank account. Randolph Stahl (Stahl), a friend of the victim, testified that when the victim owed money to a person, the victim gave that person his bank card and PIN.

On March 29, 2012, $1,260.00 was withdrawn from the victim's bank account. The person who withdrew the money used the victim's bank card at an ATM in Jersey Shore, Pennsylvania. Stahl testified that he did not have the victim's card on March 29, 2012.

On March 29, 2012, a person using the victim's bank card purchased $36.00 of gasoline at the Sheetz store in Linden, Pennsylvania. Surveillance video from the store showed that the person who purchased the gasoline drove a car with a for sale sign on the back. Surveillance video also showed that the person who purchased the gasoline was the same race and around the same age as Patrick Willits ([Appellant]). Pennsylvania State Police Trooper Tyson Havens (Havens) was familiar with [Appellant]'s car and testified that he could determine from the video that [Appellant]'s car was the car driven by the person who purchased the gasoline. [Appellant]'s ex-girlfriend, Chase Maggs (Maggs), testified that she had made a for sale sign for [Appellant]'s car, and [Appellant] had the sign on the back of his car. Maggs testified that [Appellant] told her that the victim had given [Appellant] a card to get gasoline.

The victim testified that around March 31, 2012, he noticed the lights that turn on when he opens his car doors had been removed. He testified that a few days before March 31, 2012, [Appellant] was at the victim's home.

On March 31, 2012, around 11:30 P.M., the victim was assaulted in his home. The assailant hit the victim in the side of the head with the claw of a hammer. The victim testified that after the blow, blood began to pour down his face. Blood got on the

victim's sweatshirt and on a bed that was close to the location of the assault.

The victim could not see his assailants face because it was too dark. The victim could not determine whether his assailant was male or female and could not determine the color of the assailant's skin. The victim noticed that his attacker was wearing a gray sweatshirt with a hood. The victim also noticed that the sweatshirt had a zipper.

About fifteen minutes after the assault, the victim heard a loud sound coming from inside the Harvest Moon Trailer Park. The victim recognized the sound as the sound that [Appellant]'s car makes when it is started. The victim was familiar with the sound of [Appellant]'s car because the victim is [Appellant]'s uncle. The victim testified that [Appellant]'s car had a large muffler and made a distinct sound.

According to cellular phone records, [Appellant]'s phone was physically in Linden at 11:19 P.M. on March 31, 2012.

On April 1, 2012, at 12:25 A.M., the victim called police to report the assault. Pennsylvania State Police Trooper Christine Fye (Fye) arrived at the trailer park shortly after the call. Fye saw blood that was almost dry on the victims face. Fye noticed that the victim was upset and distraught.

Maggs testified that she saw [Appellant] a little after midnight of April 1, 2012. Maggs saw [Appellant] at a mini-mart in Jersey Shore (Jersey Shore Mini-Mart). Maggs testified that [Appellant] showed her a gray sweatshirt that had a hood and a zipper. Maggs testified that the sweatshirt had blood on it. Maggs also testified that there were little drops of blood on [Appellant]'s pants. Tara Litz (Litz) also saw [Appellant] at the Jersey Shore Mini-Mart. Litz testified that she saw a gray sweatshirt with a hood in [Appellant]'s car. Litz also testified that the sweatshirt had blood on it. Unlike Maggs, Litz testified that she saw [Appellant] before midnight of April 1, 2012.

According to cellular phone records, [Appellant]'s phone was not in Jersey Shore at 12:16 A.M. on April 1, 2012. At 12:27 A.M., [Appellant]'s phone was closer to Jersey Shore than it was at 12:16 A.M. An expert testified that the movement of [Appellant]'s phone in relation to cellular phone towers was

consistent with the phone being in a car that was travelling from Linden to Jersey Shore.

Sergeant Nathan DeRemer (DeRemer) of the Tiadaghton Valley Regional Police Department testified that he saw [Appellant] at the Jersey Shore Mini-Mart after midnight of April 1, 2012. Officer Kyle Fera (Fera) of the Tiadaghton Valley Regional Police Department testified that he saw [Appellant] at the Jersey Shore Mini-Mart around 1:00 A.M. on April 1, 2012. DeRemer and Fera testified that when they saw [Appellant] at the Jersey Shore Mini-Mart, [Appellant] did not have any noticeable injuries.

On April 1, 2012, at 3:00 A.M., DeRemer and Fera again saw [Appellant]. They saw [Appellant] at the emergency room of the Jersey Shore Hospital. [Appellant] told them that around 11:30 P.M. on March 31, 2012, he was driving in Jersey Shore. [Appellant] said that two individuals in another car followed his car into a gravel parking lot in Jersey Shore. [Appellant] said that the car with the two individuals skidded in the parking lot and cornered his car in the parking lot. [Appellant] said that when he got out of his car, one of the individuals slapped him in the face. [Appellant] said that after the slap, the other individual took out a pistol and ejected, but did not fire, a round from it. [Appellant] said that the individual then pistol-whipped him in the head. At the hospital, DeRemer and Fera did not notice any signs of injury on [Appellant].

Between 3:00 A.M. and 4:00 A.M. on April 1, 2012, DeRemer and Fera went to the gravel parking lot where [Appellant] said he was assaulted. DeRemer and Fera looked for an ejected round but did not find one. Additionally, the officers did not find any marks that a skidding car would leave on gravel. DeRemer testified that the parking lot was fairly large, and DeRemer didn't know how a car could have been cornered in the lot.

At 8:55 P.M. on April 1, 2012, Fera interviewed the two individuals who [Appellant] said assaulted him. The two individuals denied assaulting [Appellant] and told Fera that they were not in Jersey Shore during the time that [Appellant] said that he was assaulted. They provided a receipt that supported what they told Fera. Fera did not notice any injuries on the individual who [Appellant] said pistol-whipped him.

At 10:00 P.M. on April 1, 2012, DeRemer, Fera, and [Appellant] went to the gravel lot to look for an ejected round. [Appellant] showed DeRemer and Fera the area where the alleged assault took place. Again, no round was found. Again, no skid marks were found.

On the afternoon of April 1, 2012, Havens interviewed [Appellant]. [Appellant] gave Havens an account of his whereabouts on March 31, 2012 and April 1, 2012. [Appellant] said that on those days, he was only in Jersey Shore and Lock Haven, Pennsylvania. [Appellant] told Havens that he was assaulted by two individuals in a gravel parking lot. Havens did not notice any injuries on [Appellant]. Havens spoke with the two individuals that [Appellant] said assaulted him. As with DeRemer and Fera, the individuals said they were not in Jersey Shore during the time that [Appellant] said he was assaulted.

On April 2, 2012, [Appellant] paid $1,275.00 in cash to a trailer park in order to rent a lot. Maggs testified that [Appellant] received about $700.00 per month in supplemental security income. Maggs testified that [Appellant] also bought gold and then sold it for a higher price. Maggs testified that she knew of [Appellant] buying gold only from the parents of his sister's boyfriend. Maggs testified that before [Appellant] moved into the trailer park, he paid $400.00 per month to rent an apartment. Maggs testified that [Appellant] also paid an electric bill and bought cigarettes. Maggs testified that [Appellant] said he got the money to rent the lot by selling two old bicycles that were in his father's basement. Maggs testified that [Appellant] said that he sold one of the bicycles for $600.00, but she thought $600.00 was too much for the brand of bicycle that [Appellant] said he sold.

Trial Court Opinion (T.C.O.), 9/22/14, at 2-6 (citations to the record omitted).

After the jury trial, Appellant was found guilty and sentenced as stated above. He then filed a post-sentence motion that the trial court denied. Subsequently he filed a notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant now presents the following issues for our review:

1. Whether the evidence was sufficient to meet the Commonwealth's burden of proving that Appellant was the actor for each offense charged in the information beyond a reasonable doubt?

2. Whether the verdict of guilty to each offense was against the weight of the evidence that Appellant was the actor?

Appellant's Brief, at 6.

### *Sufficiency of the Identity Evidence*

Appellant claims that the evidence was not sufficient to prove that he was the actor for each offense charged because Thomas Willits, the victim, made inconsistent statements at trial, and because an alibi was offered. Our review of sufficiency claims is governed by a well-established standard and scope of review:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations omitted).

The trial court found that the evidence is sufficient to enable a reasonable jury to find beyond a reasonable doubt that Appellant was the actor. We agree.

Appellant claims that, "[The victim's] statements made at trial regarding the identification of the actor create doubt that he knew who the

actor was. In contrast, because of the doubt he expressed in five previous statements, there is no reasonable inference to be drawn that established that Appellant was the actor." Appellant's Brief, at 12. In order to render insufficient the element of identity, the victim's testimony and proffered alibi would have had to so contradict the physical facts, viewed in the light most favorable to the verdict winner, that they contravene human experience and the laws of nature. Here the evidence does not rise to that level of contradiction, as discussed below. Instead, Appellant's claim goes to the credibility of a witness rather than to the sufficiency of the evidence. "Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution." *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976).

The Commonwealth presented evidence to show that Appellant used the victim's bank card. Appellant had been at the victim's home before the card was used. A surveillance video at a gas station showed a person matching Appellant's race and age, driving Appellant's vehicle, use the bank card to purchase gasoline. Appellant also paid $1,275.00 in cash to rent a lot four days after a similar amount was withdrawn from the victim's bank account.

The Commonwealth also presented evidence to show that Appellant was in the vicinity of the victim when the assault took place. Expert testimony placed Appellant's cell phone in the area of the victim's residence within fifteen minutes of the assault. The victim testified that, shortly after the incidence, he recognized Appellant's car when it started. The victim further testified that blood poured down his face after he was attacked and

that the assailant wore a gray sweatshirt. Other testimony provided that Appellant was seen with a gray sweatshirt with blood on it nearly fifteen minutes after the attack.

Given that the credibility of the witnesses offering the aforementioned evidence is left to the jury, we consider only whether the evidence offered could have satisfied the element of identity without regard to the weight of the evidence. When viewed in the light most favorable to the Commonwealth, as verdict winner, sufficient evidence was presented to show that Appellant was the person who used the bank card and assaulted the victim.

### *Weight of the Identity Evidence*

Appellant also claims that the verdict of guilty was against the evidence again because the victim made inconsistent statements at trial and due to a lack of police investigation and physical evidence. We review a weight of the evidence claim according to the following standard:

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [jury] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the [jury's] verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Karns***, 50 A.3d 158, 165 (Pa. Super. 2012) (internal citation omitted).

The trial court determined that with the testimony offered, the jury's verdict is not so contrary to the evidence that it shocks one's sense of justice. T.C.O., at 9-11. We agree.

Although evidence was presented that other people knew about the victim's bank card, and that Appellant had recently sold two old bicycles from his father's basement to account for how he acquired enough money to rent the lot, there was also evidence to support the conclusion that he was the person who used the victim's bank card. Appellant's vehicle was identified through surveillance video when the victim's card was used. In addition, he rented a lot for $1,275.00 four days after a similar amount was withdrawn from the victim's bank account.

Similarly, evidence was presented that the victim did not see his assailant's face, did not know the sex of the assailant, and did not know the color of the assailant's skin; however, there was other evidence to support the conclusion that Appellant was the person who assaulted the victim. As noted above, Appellant was seen with a gray sweatshirt with blood on it minutes after the attack and his car was heard by the victim. Further, Appellant's alibi was rebutted by several pieces of evidence. Expert testimony placed his cell phone near the victim's home and moving in the direction of the location where Appellant was seen later that night. Police investigation of the alibi revealed that there were no skid marks as was expected to be found, no ejected round as described, and the alleged assailants were able to provide their own alibi.

We find no error in the trial court's determination that the jury's credibility assessments on these matters did not shock the conscience of the trial court. There were no facts in this case contradicting the verdict that were of such undeniably great weight that the trial court could rationally conclude that justice had been obviously denied by Appellant's conviction. Accordingly, we conclude the trial court did not abuse its discretion when it found that the verdict was not contrary to the weight of the evidence.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/2015